UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-cv-10350-AK

MOHAMED SALEM,
        Plaintiff

v.

STONEHAM POLICE DEPARTMENT
and TOWN OF STONEHAM,
        Defendants

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Pursuant to Federal Rules of Civil Procedure Rule 56, this Memorandum is submitted in support of the Defendant's[1] Motion for Summary Judgment seeking judgment in its favor as a matter of law on all claims made against them in the Plaintiff's Complaint (Doc. No. 1-3).

## I.      INTRODUCTION

The Plaintiff, Mohamed Salem ("Salem"), brings this action as a result of an investigative detention occurring on December 21, 2018, when two detectives, Paul Norton ("Norton") and Patrick Carroll ("Carroll") of the Stoneham Police Department were dispatched to the property of 19 Danby Road. The detectives were responding to a call from a neighbor reporting an unknown man entering the empty house with a backpack. The Defendant now moves for summary judgment on all claims against it. Plaintiff brings the following claims against the Defendant:

> Count I – Negligent Training and/or Supervision M.G.L. C. 258A §2[2]
> Count II – Discrimination and Violation of 42 U.S.C. §1983
> Count III – Assault and Battery
> Count IV – Intentional Infliction of Emotional Distress
> Count V – Negligent Infliction of Emotional Distress

[1] The "Stoneham Police Department" is not a separate legal entity capable of suit but a subdivision of the Defendant Town of Stoneham

[2] Plaintiff's complaint cites to M.G.L. c. 258A for Count I in his complaint (*See* Doc. No. 1-3, pg. 9) which was repealed. (1993, 478, Sec. 3). Defendant presumes Plaintiff intended to cite to M.G.L. c. 258 §2, the Massachusetts Torts Claims Act ("MTCA"). (*See* Doc. No. 1-3, pg. 9).

Count VI – False Arrest
Count VII – False Imprisonment

(Doc. No. 1-3 pg. 9-13).

Plaintiff has failed to show that any of the policies, procedures, and affirmative actions of the Town deprived him of his rights under the United States Constitution. Summary judgment for Defendants Town of Stoneham is compelled.

## II.     STATEMENT OF THE FACTS

The Defendant incorporates herein its Statement of Material Facts in Support of Motion for Summary Judgment by Defendant Town of Stoneham ("DSOF"), filed herewith.

## III.     STANDARDS OF REVIEW

Summary judgment is warranted where the moving party shows that there is no genuine dispute of material fact and where the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the plaintiff, with the qualification that "evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment." *Statchen v. Palmer*, 623 F.3d 15, 18 (1st Cir. 2010); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 159 (1st Cir. 2008).[3] The Court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* A factual dispute is "genuine" if it can be resolved in favor of either party and such a dispute is "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). In

---

[3] The Supreme Court has carved out an exception to that rule, concluding that where the non-movant's account is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Campos v. Van Ness*, 711 F.3d 243, 244 (1st Cir. 2013).

reviewing a summary judgment motion, a court may examine "all of the record materials on file," *Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014), including documents, "affidavits or declaration." Fed. R. Civ. P. 56(c)(1).

Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 331 (1986); *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991) ("A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues…by showing 'that the party opposing the motion has no reasonable expectation of proving an essential element of [its] case,'".). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

However, if a factual issue is not relevant to the resolution of a controlling legal issue raised by a motion for summary judgment, it is not considered material within the meaning of Rule 56(c) and summary judgment can be granted. *U.S. Sumitomo Shoji New York, Inc.*, 814 F.2d 798, 804 (1st Cir. 1987); *U.S. Fire Ins. Corp. v. Productions Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987); *Boston Five Cents Sav. Bank v. Dept. of Housing*, 758 F.2d 1, 4 (1st Cir. 1985).

## IV.    ARGUMENT

### A.      Claims Against the Stoneham Police Department Must Be Dismissed

At the outset, the Plaintiff cannot bring suit against the "Stoneham Police Department" as such is not a separate entity from the Town of Stoneham and, therefore, any claims against the Stoneham Police Department should be summarily dismissed. The Stoneham Police Department is a

subdivision of the municipality, Town of Stoneham, Massachusetts.  The Stoneham Police

Department is not an entity subject to suit for alleged violations of the Plaintiff's civil rights.  *Curran*

*v. City of Boston*, 777 F. Supp. 116 (D. Mass. 1991) (dismissing civil rights claims brought under 42

USC 1983 against the Boston Police Department).

The Stoneham Police Department is not an independent body politic corporate thus it

cannot be sued for any of the cognizable claims alleged here by the Plaintiff. As such, for the

remainder of this memorandum "Defendants" will refer to the claims as against the Town of

Stoneham, notwithstanding that arguments made for the Town of Stoneham would apply the same

for the Stoneham Police Department if such claims persisted.

**B.**     **Plaintiff Has No Evidence of Negligent Training or Supervision and Thus His Claim Under Massachusetts Tort Claims Act, M.G.L. c. 258, Section 2 Fails.**

    **1.**     **There Is Zero Evidence of Negligent Training or Supervision**

Plaintiff provides no facts to support his allegations of inadequate training or supervision

and, therefore, their negligence claims against the town under the Mass. Gen. Laws c. 258, § 2 must

fail. *Nolan v. Krajcik*, 384 F. Supp. 2d 447 (D. Mass. 2005). Liability under M.G.L. c. 258, § 2 must be

based upon proof that: 1) the defendants owed a duty to him, 2) there was a breach of that duty, 3)

injury resulted from the breach and 4) a causal connection existed between the breach and the injury.

*Dinsky v. Framingham*, 386 Mass. 801, 804 (1982). Defendant assumes, for the purposes of its motion,

that there was a duty owed to the Plaintiff but asserts that there is no evidence that the Defendant

breached that duty.

Plaintiff has not proven that the Town of Stoneham knew or should have known that any

conduct by the veteran responding police officers was deficient or fell below accepted standards or

that supervisors within the police department failed to supervise, train, or discipline their officers.

To the contrary there is no evidence of such deficiencies in the record. *Stamps v. Town of Framingham*,

38 F. Supp. 3d 146 (D. Mass. 2014). "Massachusetts cases have only allowed supervisory negligence

claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort, which was committed by named or unnamed public employees." *Kennedy v. Town of Billerica*, 617 F.3d 520, 533 (1st Cir. 2010). Here there is no evidence that the Town of Stoneham knew or should have known about the incident or any alleged issue with their training or supervision until two years after the alleged incident, when a notice of claim letter was received from Plaintiff's counsel, triggering a Staff Investigation Report. (Exhibit 1). In fact, to the contrary, the Town of Stoneham's police officers involved in this incident were impeccably trained with years of experience. (Exhibit 11, pgs. 19-20; DSOF, ¶¶19-25).

Plaintiff further asserts that Police "are not trained to see [a] for-sale sign… [t]hey are not educated enough to know a vacant house from a[n] occupied house … [t]hey are not trained to listen". (Doc. No. 20, pg. 9). Even if such a generalized and broad assertion was deemed a standard for police training, it has been testified to that Norton in-fact did know that the house was for sale and vacant, notwithstanding, he assessed through his training the situation to be a potential breaking and entering due to the totality of the circumstances, both the timing of the call, lack of vehicle present at the scene, and report of an unknown man with a backpack. (DSOF, ¶40). Crucially, Plaintiff identifies no failure in training in the detectives temporarily detention of Mr. Salem in handcuffs for a period of two minutes[4], nor in their training for the handling of firearms. The application of handcuffs on a compliant individual is not even considered a use of force. (Exhibit 11, pg. 17). Moreover, it is similarly not evidenced how the detectives acted outside their training and Town of Stoneham Police policy by first securing the Plaintiff before engaging in dialogue and assessing who he was rather than trusting the suspect. Where no evidence is presented showing

[4] Though Plaintiff testified he believed the investigative stop took over five minutes, his testimony is contradicted by the clear objective record of radio transcriptions as preserved within the Staff Investigation report. (Exhibit 1, pgs. 3-4). This in conjunction with his further testimony regarding when the third officer arrived, as he was being unhandcuffed, makes the period of detention far shorter than he alleged. (Exhibit 1, pgs. 14-15).

conduct violated a specific regulation or procedure, summary judgment for the defendant is

required. *See Lockhart-Bembery v. Town of Wayland Police Dep't*, 404 F. Supp. 2d 373 (D. Mass. 2005).

2.      **With No Evidence or Standards, Plaintiff's Claim Under M.G.L. c. 258 §2 For Negligent Training and Supervision Fails as a Matter of Law**

M.G.L. c. 258, or the Massachusetts Tort Claims Act ("MTCA"), authorizes recovery for the

"injury or loss of property or personal injury or death caused by the negligent or wrongful act or

omission of any public employee while acting in the scope of his office or employment." Mass. Gen.

L. c. 258, § 2. However, the liability of a public employer under M.G.L. c. 258 §2 is subject to several

exceptions. *Horta v. Sullivan*, 4 F.3d 2, 15 (1st Cir. 1993); M.G.L. c. 258 §10.

M.G.L. c. 258, § 10 (h) states in relevant part that

> any claim based upon the failure to establish a police department or a
> particular police protection service, or if police protection is
> provided, for failure to provide adequate police protection, prevent
> the commission of crimes, investigate, detect or solve crimes, identify
> or apprehend criminals or suspects, arrest or detain suspects, or
> enforce any law, but not including claims based upon…
> negligent…supervision…

M.G.L. c. 258, § 10 (h).

Though Plaintiff brings his claim alleging a 'negligent' apprehension in an investigative stop,

his claim is limited to a specific showing of negligent supervision. To the extent Plaintiff alleges that

the municipal defendants were negligent in their failure to adopt and implement procedures 1) to

prevent abuse of police authority and 2) to discipline its officers, those claims are barred by the

discretionary function exception to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 10(b).

Moreover, the decision to adopt a policy is protected under the discretionary function rule. *Patrazza*

*v. Commonwealth*, 398 Mass. 464, 469-70, 497 N.E.2d 271 (1986); *Ku v. Town of Framingham*, 62 Mass.

App. Ct. 271, 279, 816 N.E.2d 170 (2004); *see also Johnson v. Town of Nantucket*, 550 F. Supp. 2d 179

(D. Mass. 2008) (Holding negligence claims against the officers, accused of verbally abusing and

physically assaulting an arrestee, were barred because the officers were acting within the scope of their employment).

Understanding Plaintiff's claim narrowly as a claim of negligent supervision, it fails as a matter of law. "Claims of failure to train or supervise 'are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance' and thus are barred by § 10(j)". *Ward v. City of Boston*, 367 F. Supp. 2d 7, 16 (D. Mass. 2005) (*quoting Armstrong v. Lamy*, 938 F. Supp. 1018, 1044 (D. Mass. 1996)); *see Chao v. Ballista*, No. 07-10934-NG, 2008 WL 5423206, at *3 (D. Mass. 2008) (holding claim based on negligent supervision and training, but not negligent assignment of employee, barred by § 10(j)); *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 366 (D. Mass. 2008) (noting that "[a] claim that [the public employer] negligently trained or supervised [the employee] would be a 'claim[ ] based on the failure to prevent or mitigate a harm, rather than participation in the initial injury causing circumstance,'" and is therefore barred by § 10(j) (quoting *Armstrong v. Lamy*, 938 F. Supp. 1018, 1044 (D. Mass. 1996))); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 177 (D. Mass. 2005) (holding that negligence claims based on school officials' failure to supervise employee is barred by § 10(j)); *see also Doe v. Old Rochester Reg'l Sch. Dist.*, 56 F.Supp.2d 114, 120-1 (D. Mass.1999) (no liability for municipality's failure to prevent or mitigate its employee's conduct); *Canty v. Old Roch. Reg'l Sch. Dist.*, 54 F. Supp. 2d 66 (D. Mass. 1999) (same). Plaintiff's negligent supervision claim must, therefore, be limited to an alleged failure with respect to the manner in which a policy was carried out, and Plaintiff has failed to identify any such policy or failure.

To the extent that the Plaintiff argues that the Stoneham Police Department has contradictory rules and policies and procedures[5] (DSOF, ¶¶ 9-10, 16-18) or that the detectives violated the reporting procedures under the Stoneham Police Department Rules and Regulations,

---

[5] While the Stoneham Rules and Regulations prescribe that all uses of firearm should be reported and that the withdrawing of a firearm constitutes use, the same rules require strict compliance with the overriding Use of Force Policy, which explicitly states officers need not report the mere display of a firearm. (DSOF, ¶ ¶ 10, 16-18).

the mere violation of a regulation is not evidence of municipal liability where the regulation is not relevant to the tortious conduct. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710, 719 (2014). Here, regardless of whether there was a reporting violation under the Town's policies and rules, such does not constitute the alleged negligence that could be said to have caused injury to the Plaintiff.

**C.     Plaintiff's 42 U.S.C. §1983 Claim Is Obscurely Plead and Must Fail Because the Town Did Not Establish Any Identifiable Unconstitutional Custom, Practice or Policy**

The doctrine that a municipality cannot incur liability under § 1983 based on *respondeat superior* is well established. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("municipality cannot be held liable under § 1983 on a *respondeat superior* theory").[6] It is well-settled in the First Circuit that to establish municipal liability under § 1983 there must be a finding of two preliminary elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the municipality is responsible for that violation, an element which has three components. First, the alleged municipal action at issue must constitute a 'policy or custom' attributable to the municipality.  Second, the municipal policy or custom must actually have caused plaintiff's injury; and third, "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005).

Plaintiff's Complaint states Count II is "Discrimination & Violation of 42 U.S.C. §1983" (Doc. No. 1-3). Plaintiff presumably invokes an Equal Protection Claim under the Fourteenth Amendment, that Defendant somehow discriminated against him on the basis of his race, ethnicity, or national origin.[7] However, the corresponding paragraphs to this claim appear to instead allege a

---

[6] "Like a municipality, a police department 'cannot be held liable in damages under § 1983 merely because it employs a tortfeasor.'" Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 300 (D. Mass. 2011) quoting Malachowski v. City of Keene, 787 F.2d 704, 711 (1st Cir.1986); accord Lumpkin v. Lucey, 2010 U.S. Dist. LEXIS 43455, 2010 WL 1794400, *2 (D. Mass. May 4, 2010) ("a municipal police department is not subject to suit under Section 1983").

[7] Plaintiff alleges he was discriminated against in caption only. There is no indication anywhere in Plaintiff's complaint what basis he believes he was discriminated besides the mere statement that he is an Egyptian Immigrant, leaving Defendant to otherwise guess whether he alleges discrimination on the basis of race, sex, religion, age, disability, marital status, national origin, or political affiliation.

Fourth Amendment Excessive Force or Unlawful Arrest claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigation, stop or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a substantive due process approach"); *Patino v. City of Revere,* Civil Action No. 13-cv-11114-LTS, at *9 (D. Mass. Feb. 1, 2016).

With respect to the Equal Protection *Monell* claim against the Town of Stoneham, such fails at the outset for the fact that the Town did not engage in an underlying constitutional violation. Plaintiff alleges he was discriminated against but provides no evidence of how any of the policies, procedures, rules, or directives of the Town were in any way designed to discriminate against him. Plaintiff admitted that the detectives at no point mentioned his ethnicity or race (Exhibit 2, pg. 68) and in no other way substantiated how the Town of Stoneham's policies guided any allegedly discriminatory actions.  Similarly, the original dispatch transmissions are devoid of any reference to ethnicity or other protected classification.

Defendant therefore more substantively addresses this claim as a Fourth Amendment Excessive Force or Unlawful Arrest claim.

1.      **No Constitutional Violation Occurred**

The Plaintiff was not subject to an unconstitutional seizure. The Fourth Amendment entitles an individual to "the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1967) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). The Defendant recognizes that the Plaintiff was entitled to the protections of the Fourth Amendment when the detectives placed him in temporary investigative custody. Placing Plaintiff in temporary custody is a seizure in the constitutional sense even though it was not an arrest. *Commonwealth v. O'Connor*, 406 Mass. 112, 120

n.6, (1989). "In order to justify 'official intrusion upon the constitutionally protected interests of the private citizen . . . the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Veiga v. McGee*, 26 F.3d 1206, 1214 (1st Cir. 1994) (citing *Terry*, 392 U.S. at 21). Here, the responding police detectives operated with reasonable suspicion that a breaking and entering was occurring. (Exhibit 11, pgs. 12, 15-16). The detectives had both the experience and knowledge that the majority of break-ins occur during daylight hours and during weekdays. (Exhibit 11, pg. 12; DSOF, ¶37). It was reasonable for the detectives to detain the Plaintiff, an unknown individual found within the house of a property known to be empty. (DSOF, ¶¶ 26-29).

An investigative stop, also known as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. at 1, occurs when a police officer, "acting on reasonable and articulable suspicion of criminal activity, briefly detains an individual to confirm or dispel his suspicion." *Id.* at 6, 88 S. Ct. 1868 (citing *United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir. 1996)). The time of a stop is a factor to consider when determining its reasonableness. "While an officer 'must work purposefully to confirm or dispel his suspicions' of criminal activity, 'there are no hard time limits' on the length of a stop". *United States v. Gonsalves*, 34 F. Supp. 3d 196, 201 (D. Mass. 2014) (quoting *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011)) *See, e.g., Owens*, 167 F.3d at 749 (noting that there is no talismanic time beyond which a *Terry* stop becomes unreasonable and holding that detention of fifty minutes was not de facto arrest); *United States v. McCarthy*, 77 F.3d 522, 531 (1st Cir. 1996) (holding that seventy-five-minute detention in locked rear passenger compartment of police car was not de facto arrest); *United States v. Sharpe*, 470 U.S. 675, 687 (1985) (finding a 20-minute detention constitutional where the detectives conducted their investigation in a diligent and reasonable manner).

Here, Plaintiff was detained in handcuffs for approximately two minutes while detectives ensured that a breaking and entering or other crime was not occurring with the entire detention

taking no longer than four minutes according to the radio records. (Exhibit 1, pg. 5; Exhibit 11, pg. 15; DSOF, ¶63). Officers were dispatched believing a potential breaking and entering was in progress. (DSOF, ¶¶ 37-40). The detectives first secured Salem the moment they saw an unknown individual in the house as they approached. (DSOF, ¶61). The Detectives then made sure the area was safe, inquired of Mr. Salem his identity as they unhandcuffed him, and checked his identification. (DSOF, ¶¶61, 64-65).  He was then promptly released from custody and allowed to resume his business as a realtor showing the property. (DSOF, ¶¶ 70-73).  Mr. Salem was at no point informed he was arrested. (DSOF, ¶64).

Police officers conducting an investigative stop for a potential breaking and entering are entitled to take reasonable measures to protect their safety, such as handcuffing an unknown individual.  *United States v. Chaney*, 647 F.3d 401, 409 (1st Cir. 2011) (noting that while handcuffs and drawn weapons suggest de facto arrest, neither factor alone is determinative); *United States v. Fornia-Castillo*, 408 F.3d 52, 64 (1st Cir. 2005) ("[N]either the use of handcuffs nor the drawing of a weapon necessarily transforms a valid Terry stop into a de facto arrest."); *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir. 1998) ("[p]olice officers engaged in an otherwise lawful stop must be permitted to take measures . . . they believe reasonably necessary to protect themselves from harm, or to safeguard the security of others"). Here the detectives were responding to a possible felony. (Exhibit 11, pg. 15; DSOF, ¶¶ 38-40). The detectives were correct, regardless of what the Plaintiff said upon their arrival, to first secure him for both his and their safety.

Under the Stoneham Police Use of Force Policy, the detectives are justified in drawing and displaying their weapons to investigate a situation that they have reasonable cause to believe may develop into a situation which involves danger to life or serious bodily injury to himself or another. (DSOF, ¶¶9-11). Here a service weapon was displayed by Detective Norton as he approached the house and as Mr. Salem was handcuffed. (DSOF, ¶¶ 47, 66-67). The Plaintiff's client, Mr. Abbas,

indicated he approached once the officer who had the firearm briefly stepped into the house. (Exhibit 14, pg. 40-41; 45-46; DSOF, ¶¶66-67). The firearm was no longer displayed by the time Abbas approached the house. (DSOF, ¶67). When Norton returned, Salem was immediately allowed on his feet and unhandcuffed. (Exhibit 14, pg. 46). Salem was then asked to present his I.D. (Exhibit 2, pg. 65). The factual record is clear: a service weapon was displayed for only so long as it took the detectives to place Mr. Salem in handcuffs. Mr. Salem was then kept in handcuffs until Norton reportedly cleared the area. (Exhibit 2, pg. 59; Exhibit 14, pg. 46). These measures were for officer safety and in accordance with their training. (Exhibit 7, pgs. 15, 25). Such concerns for officer safety are "of paramount importance in assessing the appropriateness of the action taken". *United States v. Jones,* 700 F.3d 615, 624-625 (1st Cir. 2012) (quoting *United States v. Walker*, 924 F.2d 1, 4 (1st Cir. 1991)).

### 2.   Town of Stoneham's Policies and Procedures Were Not Responsible For Any Harm to the Plaintiff

The second prong of the municipality test under § 1983 requires three elements: (a) "the alleged municipal action at issue must constitute a 'policy or custom' attributable to the City;" (b) "the municipal policy or custom actually have caused plaintiff's injury;" and (c) "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" *Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir. 2005).

Only where the municipality's failure to train its employees reflects a "deliberate indifference" to its citizens' constitutional rights "can such a shortcoming be properly thought of as a city policy or custom' that is actionable under § 1983." *Id.* at 389. In order to establish municipal liability based on an alleged failure to train, there must be an identified deficiency in the Town's training program that is closely related to the alleged constitutional deprivation. *Id.* at 391. Here, the plaintiffs have identified no particular deficiency in the Town of Stoneham's police training program. The Town of Stoneham's policies are in line with nationally recognized standards created by the

Commission on Accreditation for Law Enforcement Agencies, Inc. (CALEA). (Exhibit 11, pgs. 17-18). Additionally, the Stoneham Police Department's Use of Force Policy incorporates guidance from the Massachusetts Police Training Committee ("MPTC"). (Exhibit 11, pgs. 16-17). No such deficiency in the Town of Stoneham's policies existed.

## A.     Whether there existed a "Policy or Custom" Attributable to the Town

A "policy or custom" attributable to the Town means that it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 177 (1st Cir. 2008) (quoting *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

The *Monell* claim fails because the record has revealed that the officers of the Stoneham Police Department, including detectives Norton and Carroll, were properly trained and supervised. Additionally, Plaintiff has failed to identify a deficient policy. The Stoneham Police Department had policies and procedures in place directing officers in the performance of their duties to ensure proper training regarding the proper handling of such situations. (Exhibit 11, pgs. 17-20) Massachusetts General Laws Chapter 41, §96B requires that every person appointed to a position as a police officer must satisfactorily complete a prescribed course of study (the police academy) approved by the MPTC. M.G.L. c. 41, §96B. The detectives were experienced with both effectuating arrest and proper use of their firearms. (Exhibit 7, pgs. 6-9); (Exhibit 8, pgs. 8-9, 11). The Stoneham Police Department Use of Force Policy mirrors that of the MPTC. (Exhibit 11, pgs. 16-17). There is nothing in the record which would indicate that the Town of Stoneham established a deficient policy or custom regarding training the detectives or the use of force which caused the Plaintiff's alleged injuries.

**B.        The Municipality Did Not Cause Plaintiff's Pre-Existing Injury**

The factual record does not support that Salem was injured by the brief investigatory detainment. As discussed above, Plaintiff's Fourth Amendment rights were not violated by his temporary detention when assessing the totality of the circumstances.  There is no temporaneous hospital record of physical injuries sustained by him being on his knees or sustained injuries from being put in handcuffs. Plaintiff's Complaint alleges Salem entered therapy to treat his Post-Traumatic Stress Disorder ("PTSD") caused by his interaction with the Stoneham Police (Doc. No. 1-3, ¶22). Plaintiff's treatment records, however, indicate he was in treatment, prior to the incident, for PTSD relating to the traumatizing experiences he had with police while in Egypt. (DSOF, ¶¶ 3-8). Plaintiff's Complaint alleges that "since the date of this incident, plaintiff, Salem, has been diagnosed with trigeminal neuralgia". (Doc. No. 1-3, ¶23). It was revealed through the course of discovery however that Plaintiff's medical condition, Trigeminal Neuralgia ("TN"), pre-existed this incident. (DSOF, ¶¶ 3,8).

To the extent Plaintiff argues his condition worsened since the incident, he has related his condition to stress. (DSOF, ¶3). The factual record contradicts Plaintiff's testimony that the incident was objectively or subjectively stress inducing for the Plaintiff.[8] Plaintiff was noted by both Abbas, the detectives, and the radio transmission as laughing following the incident and otherwise participating in joking about the incident. (DSOF, ¶¶ 70-71, 76). Plaintiff stated he was unharmed to Mr. Abbas immediately following the incident. (DSOF, ¶72). Plaintiff immediately carried on the

---

[8] Plaintiff's testimony is contradicted several times by the record regarding the length of the stop, his alleged identification and understanding of the detectives as police officers, and in when he told officers he was a real estate agent. (Exhibit 11, pg. 14; DSOF, ¶¶ 51-53, 62, 65). As with the issue of whether a gun was actually pointed at the Plaintiff or was instead in a low-ready position, Defendant asserts such contradiction does not create an issue of material fact needed for this Court to find in favor of Defendant for purposes of this motion, however it does submit where such discrepancies are so blatantly contradicted by the collective evidence that the Court need not consider them. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Campos v. Van Ness*, 711 F.3d 243, 244 (1st Cir. 2013).

tour following the incident and was able to later attend prayer at his mosque and pick up his car from being serviced. (DSOF, ¶73; Exhibit 2, pg. 89).

As further explored below, when discussing Plaintiff's negligent infliction of emotional distress claim, to the extent Plaintiff can state a claim of injury he has failed to establish its causality.

**C.    The Town of Stoneham Was Not Deliberately Indifferent to Plaintiff's Constitutional Rights**

In addition to proving the existence of an unconstitutional policy, Plaintiffs must also establish that said policy amounts to a "deliberate indifference" to their constitutional rights.  *DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989)). Only if there were deliberate indifference can a municipality be held liable under § 1983. To succeed under this "exceptionally stringent" standard, Plaintiffs must show that the Town of Stoneham has disregarded a known or obvious risk of serious harm by causing or permitting police officers to display their firearm or utilize handcuffs when effectuating a temporary investigative detainment. There is no evidence of deficient training. There is no evidence of previous unconstitutional or other infractions by either Detective Norton or Carroll. When the Town of Stoneham was notified of this alleged incident it moved swiftly to investigate. (Exhibit 1). The uncontroverted evidence is overwhelming that even if an unconstitutional policy can be established, the Town of Stoneham did not act with deliberate indifference.

Moreover, as discussed previously above, while Plaintiff may indicate that the detectives in this instance failed to report or that there is a contradiction in the reporting policy of the Town of Stoneham, an administrative violation which may lead to procedural misconduct or a violation of state law does not in and of itself, amount to an unconstitutional deprivation of rights.  *See DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005). The record was clear that the controlling, most current policy clearly stated that a use of force report was not required for the mere display of a firearm.

(DSOF, ¶¶ 10,18). Even if such was required, Salem has no constitutional right to any alleged inter-departmental use of force report. Plaintiff's §1983 claim therefore cannot succeed under *Monell*.

**D.      The Intentional Tort Claims (Counts III, IV, VI, & VII) Fail As A Matter Of Law**

To the extent Plaintiff's assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress claims are cognizable as a common law claim and asserted against the Town of Stoneham such must fail as a matter of law. Counts III, IV, VI, and VII are all alleged as intentional torts.[9] These claims are expressly barred as to the municipal defendant pursuant to M.G.L. c. 258, § 10 (c). *Galego v. City of Fall River*, No. 22-12243-MPK1, at *33 (D. Mass. Nov. 20, 2023) ("[A]ssault, battery, false imprisonment, and false arrest are each intentional torts expressly barred by § 10(c)").

The Massachusetts Supreme Judicial Court has held:

> [t]here is no case law in this Commonwealth holding municipalities liable for the intentional torts of their employees. By excluding intentional torts from the scope of G. L. c. 258, the Legislature left open the matter of governmental liability for intentional torts. Consistent with the common law principles of governmental immunity which preceded the Massachusetts Tort Claims Act, we conclude that public employers retain their immunity from suits arising from intentional torts.

*Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 284-5 (1985).

As such, the Town of Stoneham is immune from the Plaintiff's intentional tort claims and Plaintiff's claims of Assault and Battery, Intentional Infliction of Emotional Distress, False Arrest, and False Imprisonment must be dismissed.

**E.      Plaintiff's Other Purported Negligence Claims Fail as a Matter of Law Because the Police Conduct Is Reasonable, There Is an Insufficient Causal Relationship, and the Town Is Immune (Count V)**

---

[9] To the extent Plaintiff is suggesting a claim for negligent false arrest or detention, such is not a recognizable cause of action under Massachusetts common law. *See Alves v. Mass. State Police*, 90 Mass. App. Ct. 822, 827 n.12 (2017); *Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 626 (2012).

To state a claim for negligent infliction of emotional distress, a plaintiff must plausibly allege (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomology; and (5) that a reasonable person would have suffered emotional distress under the circumstances. *Doe v. Trustees of Boston College*, 892 F.3d 67, 95 (1st Cir. 2018); *Gouin v. Gouin*, 249 F. Supp. 2d 62, 66 (D. Mass. 2003). "Negligence is the breach of duty on the part of one person to exercise care to protect another against injuries suffered by the person to whom the duty is owed." *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 267 n.4 (1986). Here, there was no breach of duty owed to the Plaintiff.

Plaintiff generally avers the Town of Stoneham had a duty to act reasonably and should have listened to him prior to detaining him. The unintentional nature of the Defendant's alleged tortious conduct justifies the imposition of an additional legal burden on the Plaintiff. *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 133 (1993). Here, the detectives had a reasonable suspicion that a breaking and entering was occurring which was reasonably not dispelled merely because the suspected individual was telling them he is a realtor. The police had the right to first detain to investigate and then quell their reasonable suspicion. As previously discussed above, the detectives' actions were reasonable, constitutional, and in accordance with their training. The citizen caller who was witness to the arrest even provided her civilian opinion that she did not believe the police did anything wrong in the detention of the Plaintiff. (Exhibit 1, pg. 2). Plaintiff, therefore, has a significant burden to specifically state his case as to negligent infliction of emotional distress.

To properly state a claim, Plaintiff must show that there is a causally-related physical harm. *Payton v. Abbott Labs*, 386 Mass. 540, 578-581 (1982). Plaintiff does not indicate physical injuries resulting from the incident. There is no claim that police officers even touched Plaintiff except for the temporary handcuffing. Plaintiff does however express an aggravation of his TN, stress related condition. (DSOF, ¶3, 8).

To show a causal connection, Massachusetts law requires that the shock of emotional distress follows closely on the heels of the accident. *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 314 (D. Mass. 2017). Here, the record shows Plaintiff left the incident without any aggravation to his TN condition, was able to attend afternoon prayer, was participant to additional joking about the incident with Abbas, and did not indicate any increase in physical pain until attending a doctor's appointment until months later on March 1, 2019. Plaintiff's physical manifestations occurring months after the incident cannot be the basis for a claim of negligent infliction of emotional distress. Plaintiff's only other medical record indicating symptoms is his January 16, 2019 appointment with his social worker where he indicated anxiety, intrusive thoughts, and anger because the incident "stirred up memories of previous interrogations by Egyptian police". (Exhibit 3, pg. 3). Such, still untimely, cannot be the basis for physical manifestations and even if such were sufficient, such is not markedly different from Plaintiff's underlying pre-existing symptoms from his PTSD of "nightmares, sleep disturbance, flashbacks, chronic anxiety, and exaggerated startle response". (Exhibit 3, pg. 1). Plaintiff's alleged worsening of his stress-based condition is just as easily identified through other concurrent factors such as his decision to stop taking his TN medication (Exhibit 17, pg. 4) or his son's worsening condition, which he had noted to his psychologist as causing him concern prior to the incident and as a reason for canceling future appointments. (Exhibit 3, pg. 3).

Even if the Plaintiff were to properly substantiate causality for his negligent infliction of emotional distress claim, the Town is additionally immune from this claim under M.G.L. c 258, §10.

M.G.L. c 258, § 10(h) states:

> (h) any claim based upon the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law, but not including claims based upon the negligent operation of motor vehicles, negligent protection, supervision or care

of persons in custody, or as otherwise provided in clause (1) of
subparagraph (j).

M.G.L. c 258, § 10(h)

Here the Town cannot be liable for a claim of negligence brough about by their investigation, identification of, and apprehension of Mr. Salem as a suspect for the Urgent call they were dispatched to. *Fellman v. Khalsa*, 17 Mass. L. Rep. 238 (Mass. Super. Ct. 2004) (finding for a municipality where negligence complaint against it was that police officer negligently directed traffic through an intersection in a negligent manner caused a vehicle's passenger injury). The detectives were explicitly acting to identify and apprehend Mr. Salem and their mere doing of such, even if negligent, cannot be the basis for any claims of damages. The Plaintiff's claim therefore fails because he cannot show the Town was negligent in causing him harm and they are otherwise statutorily immune.

## V.   CONCLUSION

For the above stated reasons, the defendants request that this Court enter judgment in its favor.

The Defendant,
TOWN OF STONEHAM

By its attorneys:

*/s/ Joseph Mongiardo*
_____
Douglas I. Louison (BBO# 545191)
dlouison@lccplaw.com
Joseph A. Mongiardo (BBO# 710670)
jmongiardo@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph A. Mongiardo, hereby certify that on February 7, 2024, a true copy of the above document was served upon:

Narini Badalian, Esq. (BBO #690495)
The Cohen Law Group
500 Commercial Street, Suite 4R
Boston, MA 02109
narini@cohenlawgroupboston.com

Herbert S. Cohen, Esq. (BBO #089180)
The Cohen Law Group
500 Commercial Street, Suite 4R
Boston, MA  02109
hscohenlaw@gmail.com

*/s/ Joseph Mongiardo*
Joseph A. Mongiardo